UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JERAMIE S. HUBER, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>IKORCC PENSION PLAN, )<br>      Defendant. ) | CAUSE NO.: 2:23-CV-71-JPK |

## OPINION AND ORDER

This matter is before the Court on Defendant Indiana Kentucky Ohio Regional Council of Carpenters Pension Plan's ("IKORCC") motion to dismiss [DE 8], and Plaintiff's Jeramie S. Huber's "Motion to Deny Motion to Dismiss" [DE 16]. Huber, proceeding *pro se*, filed a complaint asking the Court to order IKORCC to return contributions he allegedly made to the plan, because it "illegally invest[ed]" the money and has not provided him with documents he requested. IKORCC seeks to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Huber has no right to any distribution from the plan, that he has not plausibly alleged that its practices were illegal, and that he failed to exhaust the remedies available under the plan. For the reasons described below, the Court grants IKORCC's motion, denies Huber's motion, and dismisses the complaint without prejudice.

## BACKGROUND

For purposes of the motions to dismiss, the Court considers the facts in the light most favorable to Huber, accepting as true all well-pleaded facts alleged, and drawing all plausible inferences in his favor. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016).

The body of Huber's complaint reads as follows:

> I am suing the IKORCC pension plan for illegal investment of funds (failing to adhere to the bylaws). The Board of Trustees continuously fails to provide

documents and funds requested as their bylaws state should be done [] upon request. My contributions have been used to generate profits in areas other than agreed upon through unlawful investment practices. I made a request with IKORCC Board of Trustees to address the issues and obtain those funds and am being ignored (disregarded).

I am suing for contributions along with all interest and compounding interest earned on my contributions from 2005 to date in both NWI pension plan and merger IKORCC pension plan[] along with access to previously requested documents.

[DE 1].

Huber tries to allege additional facts in response to the motion to dismiss and in his supplemental motion [DE 12, 16]. He filed over 2,000 pages of documents with his supplemental motion, including a summary description of the plan[1]. [DE 18]. However, "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012); *see also Buell v. Experian Info. Sols., Inc.*, No. 1:22-CV-14-HAB, 2022 WL 1166713, at *1 (N.D. Ind. Apr. 20, 2022) ("The problem with Plaintiff's argument is that her explanation . . . isn't in her complaint. It is axiomatic that the complaint may not be amended by the briefs.") (quotation omitted). While the Court considers Huber's arguments from those filings, it does not consider any new facts presented within the filings, although the Court notes they would not change the outcome of the motion.

For its part, IKORCC attached a copy of the plan rules (titled the "Plan Document") [DE 9-1] to its response, and seeks to have the document considered with its motion. On a motion to dismiss under Rule 12(b)(6), "a court may consider documents submitted by the *movant* that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022)

---

[1] Although Huber seems to refer to this document as the "plan bylaws," the document states that it "summarizes some of the important features of the Plan's administration," and that the participants' rights are ultimately "governed by the provisions of the Plan Document." [DE 18].

(emphasis added). "[T]he concern is that . . . the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). The pension plan's rules were referenced in Huber's complaint, are central to his claim, and Huber has not challenged the authenticity of the document. Accordingly, the Court considers the Plan Document to provide context to Huber's allegations and IKORCC's arguments for dismissal. Again, the Court notes that even without the Plan Document, the outcome of the motions would not change.

## STANDARD OF REVIEW

"The purpose of a motion to dismiss [pursuant to Rule 12(b)(6)] is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quotation marks and citation omitted). As described above, the Court construes the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all plausible inferences in his favor. *Jackson*, 833 F.3d at 862; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion to dismiss for failure to state a claim, a complaint must comply with Rule 8(a)(2) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation marks and citation omitted). Further, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not analogous to a

"probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court also considers that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## ANALYSIS

IKORRC argues that the Employee Retirement Income Security Act ("ERISA") preempts any state-law claims that Huber might pursue, and Huber does not contest that. *See* 29 U.S.C. § 1144 (ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *Halperin v. Richards*, 7 F.4th 534, 540-41 (7th Cir. 2021). Although the Court has considered whether Huber could state a claim under any legal theory, the analysis is ultimately focused on ERISA.

1. **Administrative remedies**

Before a plan participant can sue under ERISA, they must exhaust the grievance procedure available to them under the plan. *Di Joseph v. Standard Ins. Co.,* 776 F. App'x 343, 348 (7th Cir. 2019); *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360-361 (7th Cir. 2011). Because the ERISA plaintiff must only exhaust "available" remedies, the Seventh Circuit has "recognized two circumstances in which a failure to exhaust may be excused. One is if there is a lack of meaningful access to review procedures, and the other applies if pursuing internal remedies would be futile." *Ruttenberg v. U.S. Life Ins. Co. in City of New York*, 413 F.3d 652, 662 (7th Cir. 2005) (quoting *Stark v. PPM Am.*, Inc., 354 F.3d 666, 671 (7th Cir. 2004)). A plaintiff's administrative grievance is futile if "it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996) (quotation omitted).

4

IKORRC argues that Huber has not plausibly alleged that he exhausted available administrative remedies.[2] Huber does not address that issue in the complaint or in briefing. Huber's bare allegations that he "requested" documents and funds, and that he has been "ignored," do not themselves support an inference that he exhausted the administrative procedure, that no procedure was available to him, or that the process would have been futile.

Some courts within this district have required plaintiffs to affirmatively plead exhaustion of administrative remedies, and dismissed complaints when they did not do so.[3] Others have found that because exhaustion of remedies is an affirmative defense, it is not an appropriate basis for dismissal at the pleading stage.[4] While the Seventh Circuit has acknowledged that district courts can dismiss on this basis, *see Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002), it has cautioned that this typically happens in cases with "records significantly more plenary" than what is available at the pleading stage. *See Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996).

The briefing on this motion suggests that whatever process was available may have been futile. IKORRC argues that Huber was only entitled to a distribution of funds if he was pension-eligible, and Huber "cannot truthfully make [allegations of pension eligibility]. He is not entitled to a pension." [DE 9 at 6]. Even if Huber did not follow the procedure, it is hard to see how a

---

[2] It is unclear exactly what remedies were available, although the Plan Document refers to a procedure to appeal a denial of benefits. [*See* DE 9-1 § 9.18].

[3] *See, e.g.*, *Baer v. Masonite Corp.*, No. 3:11-CV-124, 2011 WL 2929166, at *3 (N.D. Ind. July 15, 2011); *Estes v. Beta Steel Corp.*, No. 2:06-CV-221, 2006 WL 3542731, at *11 (N.D. Ind. Nov. 7, 2006) ("Because Estes has alleged no facts tending to show that the review procedure would not work, the futility exception is inapplicable."); *Coats v. Kraft Foods, Inc.*, 12 F. Supp. 2d 862, 869 (N.D. Ind. 1998).

[4] *See, e.g.*, *Gipson v. Four Cnty. Comprehensive Mental Health Ctr., Inc.*, No. 3:15CV360-PPS/CAN, 2016 WL 1059355, at *3 (N.D. Ind. Mar. 16, 2016); *Lewalski v. Sanlo Mfg. Co.*, No. 308-CV-311 PPS, 2009 WL 1370950, at *4 (N.D. Ind. May 14, 2009) ("[F]ailure to exhaust administrative remedies is an affirmative defense, and a plaintiff need not plead around affirmative defenses."); *Parkview Hosp., Inc. v. White's Residential & Fam. Servs., Inc.*, No. 1:07-CV-0208 WCL, 2008 WL 89878, at *5 (N.D. Ind. Jan. 7, 2008) ("[A] plaintiff will survive a motion to dismiss so long as he does not allege facts from which it is clear that he has failed to exhaust administrative remedies.").

grievance would have changed the result, given IKORRC's position. That distinguishes this case from others where complaints were dismissed because the record provided no support for an inference of futility. *C.f. Zhou,* 295 F.3d at 680; *Baer v. Masonite Corp.*, No. 3:11-CV-124, 2011 WL 2929166, at *3 (N.D. Ind. July 15, 2011) (finding "no explanation whatsoever" why a grievance would have been futile). Given the inference of futility suggested by IKORRC's arguments, and the case law indicating that Huber did not need to anticipate an affirmative defense in his complaint, the Court declines to dismiss on that basis.

### 2. Illegal Investment

Huber first accuses IKORRC of "illegal investment of funds (failing to adhere to the bylaws)," and specifically that "[his] contributions"[5] to the plan "have been used to generate profits in areas other than agreed upon through unlawful investment practices." [DE 1 ¶ 1]. Under ERISA, a plan fiduciary owes a duty of loyalty to the plan participants, and must "discharge his duties . . . solely in the interest of the participants and beneficiaries," with the exclusive purpose of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022) (quoting 29 U.S.C. § 1104(a)(1)(A)).

Huber's complaint does not explain what investments he is referring to, or why they conflicted with the plan rules or the participants' interests. Given the liberal construction afforded to a pro se litigant, the Court has reviewed Huber's filings, including his supplemental motion[6], to

---

[5] IKORRC points out that employers contribute to the plan on the employees' behalf; employees are not permitted to contribute. [DE 9-1, § 9.02]. The Court infers that when Huber refers to "his" contributions, he means contributions made by his employer on his behalf. The distinction does not affect the outcome of the motion.

[6] As previously noted, Huber filed a flash drive containing over 2,000 pages of tax forms, financial statements, and other documents apparently related to IKORRC and its management over a 12-year period. [DE 18]. But he does not clearly explain why those documents show illegal activity, and it is not the Court's role to "scour the record in an attempt to formulate a cogent argument when [Huber] has presented none." *Jeffers v. Comm'r of Internal Revenue*, 992 F.3d 649, 653 (7th Cir. 2021).

try to discern what he is referring to. First, Huber may be stating an objection about how the fund was structured. According to the Plan Document, IKORRC was formed by a merger of four different pension plans, including the Northwest Indiana Regional Council of Carpenters Plan ("NWI Plan") [DE 9-1, § 1.02]. Huber argues that "[t]he plan shouldn[']t have been structured with NWI resources" [DE 16-1 at 1], and his money "should have been Allocated before the Merger was completed" [DE 12], because the merger contradicted the rules of the NWI Plan. But he has not alleged any facts supporting a plausible[7] inference that the merger was improper, or that a merger, improper or not, would entitle him to a distribution of funds.

Huber also objects to the involvement of certain third parties, Benesys, Zenith, and Cheiron, that apparently provided administrative services to IKORCC. [*See* DE 16-1 at 1-5]. A plan fiduciary does not breach its duty merely by engaging third parties to help administer the fund, or paying fees to those entities, and the plan participants do not necessarily have to agree with those decisions. *See, e.g., Albert*, 47 F.4th at 578-83 (despite plaintiff's objection, plan fiduciary did not violate duty by contracting with third parties for recordkeeping, management, and advisor fees); *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 547 (7th Cir. 2022). While it is possible for a plan fiduciary to violate its "duty of prudence" by agreeing to unreasonable fees, Huber's complaint does not explain why any fees "were excessive relative to the services rendered" or otherwise imprudent. *Albert*, 47 F.4th at 582 (quoting *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022)). If this is what Huber was referring to in his complaint, his bare allegations that the engagement of third parties was "illegal" or

---

[7] Huber argues that the funds had to be "secured and insured in individual accounts," [DE 16-1 at 5], but it is unclear why this would preclude a merger. *See* 29 U.S.C. § 1411 (listing requirements for mergers of multiemployer pension plans, including that "no participant's or beneficiary's accrued benefit will be lower immediately after the effective date of the merger . . . [than] immediately before that date.").

"unlawful" do not support a plausible inference of a claim. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.") (quotation marks omitted).

### 3. Withholding of documents

Huber alleges that the plan's board of trustees "continuously fails to provide documents [] requested as their bylaws state should be done [] upon request." ERISA imposes "copious, detailed rules about responding to requests for information by participants and beneficiaries." *Dean*, 46 F.4th at 550. Participants are entitled to a summary description of the plan, benefit statements, annual reports, and financial statements, among other information. *See* 29 U.S.C. §§ 1021-1025. In addition, the fiduciary duty of loyalty under ERISA includes the "obligation to communicate material facts affecting the interests of beneficiaries." *Kenseth*, 610 F.3d at 466. Material information is "information the participants need[] to know to keep from acting to their detriment." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (abrogated on other grounds). It does not appear that the Plan Document imposes any further disclosure requirements. [*See* DE 9-1].

Huber does not clearly state what documents he believes he is entitled to. The most detail Huber provides is in his supplemental motion: "When looking over financials that are provided in the IRS 5500 forms[, it is] evident that KEY details are missing (Hedge fund/Financials DETAILS). I have requested this info from all parties involved . . . they refuse to be completely Transparent as the BYLAWS and ERISA communicate they shall be." [DE 16-1 at 1]. Upon review of the tax forms Huber filed with the Court, it is unclear exactly what information Huber believes is missing. *See Dale v. NFP Corp.*, No. 20-CV-02942, 2023 WL 2306825, at *13 (N.D. Ill. Mar. 1, 2023) ("Plaintiffs do not specify which 'material information' or 'financial reports'

8

about the investment were withheld. Such bald assertions do not state a breach of fiduciary duty claim.") (quotation omitted).

Huber states that IKORRC "refuse[s] to disclose the entirety of ALL information requested" [DE 12], "provid[es] partial bits of information (lacking total disclosure)" [DE 12], and "refus[es] to be completely transparent" [DE 16]. But IKORRC is not required to provide Huber with every piece of information he requests. *See*, *e.g.*, *Hecker*, 556 F.3d at 585-86 (precise details of revenue-sharing arrangement with third party was "not information the participants needed to know to keep from acting to their detriment. The information is thus not material, and its omission is not a breach of [] fiduciary duty."). So it is not enough to allege a general lack of transparency or the absence of "total disclosure." Huber has not pled facts supporting a reasonable inference that he was denied some specific information to which he was entitled.

### 4. Request for hearing

In briefing, Huber asked to make a "presentation" on the motion to dismiss [DE 12] and sought a hearing on his supplemental motion [DE 16-1 at 6]. Because a hearing is not needed to resolve these motions, the requests are denied. If a request to amend the complaint is filed, the Court will consider whether a hearing would be appropriate. *See* N. D. Ind. L. R. 7-5(c) (the Court may "grant or deny a request for oral argument or an evidentiary hearing in its discretion").

## CONCLUSION

Having considered all facts and reasonable inferences in Huber's favor, and liberally construed his amended complaint as required of a *pro se* litigant, the Court concludes that Huber has not stated a claim for which this Court can provide relief.

Accordingly, the Court **GRANTS** IKORRC's motion to dismiss [DE 8], **DENIES as moot** Huber's supplemental motion [DE 16], and **ORDERS** that the complaint is **DISMISSED without prejudice**. Any request to amend the complaint must be filed by <u>**August 10, 2023**</u>.

So ORDERED this 15th day of June, 2023.

                                                  s/ Joshua P. Kolar
                                                  MAGISTRATE JUDGE JOSHUA P. KOLAR
                                                  UNITED STATES DISTRICT COURT